MELINDA HAAG (CABN 132612)
United States Attorney

J. DOUGLAS WILSON (DCBN 412811)
Chief, Criminal Division

BENJAMIN KINGSLEY (NYBN 4758389)
Assistant United States Attorney
    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-6937
    FAX: (415) 436-7234
    benjamin.kingsley@usdoj.gov

Attorneys for the United States

FILED
OCT 14 2014
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| UNITED STATES OF AMERICA, | ) NO. CR 14-149 RS |
|---|---|
| Plaintiff, | ) PLEA AGREEMENT |
| v. | ) |
| IMRAN HUSAIN, | ) |
| Defendant. | ) |

I, Imran Husain, and the United States Attorney's Office for the Northern District of California (hereafter "the government") enter into this written plea agreement (the "Agreement") pursuant to Rule 11(c)(1)(A) and 11(c)(1)(B) of the Federal Rules of Criminal Procedure:

The Defendant's Promises

1.    I agree to plead guilty to Count One of the captioned Indictment charging me with conspiracy to obstruct the proceedings of the Securities and Exchange Commission ("SEC"), in violation of 18 U.S.C. § 371.

I agree that the elements of 18 U.S.C. § 371 are as follows: (1) there was an agreement between two or more persons to obstruct the proceedings of the SEC; (2) I became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it; and (3) one of the members of the conspiracy performed at least one overt act for the purpose of carrying out the conspiracy.

PLEA AGREEMENT
CR 14-149 RS                      1

I agree that the maximum penalties for 18 U.S.C. § 371 are as follows:

| | | |
|---|---|---|
| a. | Maximum prison term | 5 years |
| b. | Maximum fine | $250,000 or twice gross gain or loss |
| c. | Maximum supervised release term | 3 years |
| d. | Restitution | |
| e. | Mandatory special assessment | $100 |
| f. | Potential deportation | |

I acknowledge that pleading guilty may have consequences with respect to my immigration status if I am not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, which may include the offense to which I am pleading guilty. Removal and other immigration consequences are the subject of a separate proceeding, however, and I understand that no one, including my attorney or the district court, can predict to a certainty the effect of this conviction on my immigration status. I nevertheless affirm that I want to plead guilty regardless of any immigration consequences that may result from my guilty plea, even if the consequence is my automatic removal from the United States.

2. I agree that I am guilty of the offense to which I am pleading guilty, and I agree that the following facts are true:

From approximately 2008 to at least 2012, I controlled various publicly traded "shell corporations." To my understanding, a "shell corporation" is a company that serves as a vehicle for a business transaction without itself having any significant assets or operations. I directed CEOs to form many of these shell corporations and controlled the actions taken by the CEOs. These public shell corporations were sold to people who I knew would likely use the shell corporation to merge into private corporations that had some ongoing business, in a process known as a "reverse merger." To my understanding, a "reverse merger" is a legal mechanism for private companies to become public companies.

I hired an attorney, Gregg Jaclin, to advise me regarding the formation and to help prepare the various corporate documents, including SEC filings, necessary to take these shell companies public. Jaclin and I agreed that I should be considered as a "consultant" only, even though I exercised control

over the companies, and he advised me to keep my name off of all the corporate documents, including SEC filings, made by the companies.

There were several reasons that I kept my name off all of these corporate documents. Jaclin explained to me that the SEC would be unlikely to approve the registration statements if I my name were disclosed as an officer, control person, or primary shareholder on all of these companies. I understood that it would look suspicious to the SEC if I were listed as a control person for a series of shell companies. I also was afraid of what would happen to me if the SEC knew about my involvement with these companies, as I was previously subpoenaed by the SEC to testify in connection with an investigation of a company for which I had served as an officer.

As a result, and under Jaclin's guidance, I generally recruited "nominees" to serve as CEOs and shareholders of these companies. By "nominee," I mean individuals whose name appeared on the corporate documents and bank accounts as the company CEOs and officers but who did not exercise any actual control over the companies. The nominee CEOs were typically friends and family members. I recruited these CEOs, and Jaclin and I directed them on all the actions they needed to take in order to take the company public and eventually sell it. I paid others to help recruit shareholders. Sometimes, these nominee shareholders submitted blank stock sale agreements at the same time that they purchased shares, to ensure that the buyer of the company could control the free trading shares of the company. The names of the CEOs and shareholders appeared on all the corporate documents and SEC filings prepared by Jaclin's office, but my name never did, even though, as Jaclin was fully aware, I had the final authority on all matters involving the companies. I corresponded with Jaclin and his attorneys regarding important decisions involving the companies, but the CEOs generally did not. I was aware that the shell companies that I was creating were valuable because they allowed the people who acquired them to completely control the shares and corporate actions of the companies that otherwise appeared to be legitimate public companies.

One of the companies that I formed in this manner was PR Complete Holdings. As with the other companies, I recruited the CEO, Christina Albice, and paid someone to recruit the shareholders for me. With Jaclin's assistance and under my direction, Albice signed various SEC filings indicating that she was the CEO and that there were no other control persons of the company. In reality, Albice took

PLEA AGREEMENT
CR 14-149 RS                                      3

whatever actions were directed by me or Jaclin and his associates. In December 2009, PR Complete Holdings was sold, with Jaclin's assistance, to an individual named Barry Honig as part of a reverse merger into a new public company called YesDTC. My involvement ended at this time.

In August 2012, Albice informed me that she had been subpoenaed by the SEC to produce documents and testify in an investigation regarding PR Complete. Albice informed me she had no money to pay for an attorney and wanted my advice on how to handle the subpoena. I contacted Gregg Jaclin about this subpoena. He referred me to Mark Hunter, an attorney friend of his who was experienced in SEC matters. Jaclin told me that he wound speak with Hunter about my role in the company, and I ultimately arranged for Hunter to represent Albice in the SEC proceedings.

Albice's testimony was set for October 2, 2012, and, over phone calls in August and September 2012 as well as a visit she made to my house the weekend before her testimony, I coached her how to testify and instructed her to testify falsely by leaving my name out of it. Albice asked for my help in preparing for her testimony, as she had had no substantive involvement in the company and was worried about not knowing the answers to questions that would be asked at the deposition. I told Albice to withhold facts about my involvement from the SEC. I told this to her because I did not want the SEC to know about my involvement with PR Complete, and because Jaclin suggested that her testimony should be consistent with what was falsely disclosed in the registration statements he had filed on behalf of this company. I spoke with Jaclin during the weekend that Albice was visiting, to get his advice on how best to "coach" her—i.e., what she should say and how she should say it during any testimony, and we agreed that the less Albice said about my involvement, the better.

Accordingly, I agreed with Albice and Jaclin to obstruct the proceedings of the SEC by concealing the facts surrounding my true involvement in PR Complete Holdings. I agree that I entered into this conspiracy knowing of its objects and intending to help accomplish the unlawful end of withholding information from the SEC, and that I took overt acts, described above, in furtherance of the conspiracy. I further agree that I was aware that there was an agency proceeding, in this case the SEC investigation into YesDTC and PR Complete Holdings, and that I intentionally endeavored corruptly, that is, with an improper purpose, to influence, obstruct, and impede that proceeding as described herein.

3. I agree to give up all rights that I would have if I chose to proceed to trial, including the

PLEA AGREEMENT
CR 14-149 RS                                              4

rights to a jury trial with the assistance of an attorney; to confront and cross-examine government witnesses; to remain silent or testify; to move to suppress evidence or raise any other Fourth or Fifth Amendment claims; to any further discovery from the government; and to pursue any affirmative defenses and present evidence. I also agree to waive venue, if necessary, for the charges filed in this case.

4. I agree to give up my right to appeal my conviction, the judgment, and orders of the Court. I also agree to waive any right I have to appeal any aspect of my sentence, including any orders relating to forfeiture and or restitution.

5. I agree not to file any collateral attack on my conviction or sentence, including a petition under 28 U.S.C. § 2255 or 28 U.S.C. § 2241, except that I reserve my right to claim that my counsel was ineffective in connection with the negotiation of this Agreement or the entry of my guilty plea. I also agree not to seek relief under 18 U.S.C. § 3582.

6. I agree not to ask the Court to withdraw my guilty plea at any time after it is entered. I understand that by entering into this Agreement: (a) I agree that the facts set forth in Paragraph 2 of this Agreement shall be admissible against me under Fed. R. Evid. 801(d)(2)(A) in any subsequent proceeding, including at trial, in the event I violate any of the terms of this Agreement, and (b) I expressly waive any and all rights under Fed. R. Crim. 11(f) and Fed. R. Evid. 410 with regard to the facts set forth in Paragraph 2 of this Agreement in any such subsequent proceeding. I understand that the government will not preserve any physical evidence obtained in this case.

7. I agree that the Court will use the Sentencing Guidelines to calculate my sentence. I understand that the Court must consult the Guidelines and take them into account when sentencing, together with the factors set forth in 18 U.S.C. § 3553(a). I also understand that the Court is not bound by the Guidelines calculations below; the Court may conclude that a higher Guidelines range applies to me, and, if it does, I will not be entitled, nor will I ask to withdraw my guilty plea. I also agree that regardless of the sentence that the Court imposes on me, I will not be entitled, nor will I ask, to withdraw my guilty plea. I further agree that the Sentencing Guidelines offense level will be calculated in the manner described below. I agree that, other than seeking a possible downward departure pursuant to U.S.S.G. § 5K1.1, I will not ask for any other adjustment to or reduction in the offense level or

PLEA AGREEMENT
CR 14-149 RS                        5

downward departure from the Guidelines range as determined by the Court. I nonetheless reserve the right to request a sentencing variance based on § 3553(a) factors, and I understand that the government reserves it right to oppose such a variance. The parties have reached no agreement regarding my Criminal History Category.

| | | |
|---|---|---|
| a. | Base Offense Level, U.S.S.G. § 2J1.2(a): | 14 |
| b. | Organizer of criminal activity, U.S.S.G. § 3B1.1(c) | +2 |
| c. | Destruction of a substantial number of records, selection of any especially probative record to destroy, or otherwise extensive in scope, U.S.S.G. § 2J1.2(b)(3)(A), (B), or (C) | 0 or +2 |
| d. | Acceptance of Responsibility: If I meet the requirements of U.S.S.G. § 3E1.1, I may be entitled to a three-level reduction for acceptance of responsibility, provided that I forthrightly admit my guilt, cooperate with the Court and the Probation Office in any presentence investigation ordered by the Court, and continue to manifest an acceptance of responsibility through and including the time of sentencing. | -3 |
| e. | Adjusted Offense Level: | 13 or 15 |

8. I agree that regardless of any other provision of this Agreement, the government may and will provide the Court and the Probation Office with all information relevant to the charged offenses and the sentencing decision.

9. I agree to pay restitution for the losses, if any, caused by the offenses with which I was charged in this case. I agree that any fine, forfeiture, or restitution imposed by the Court against me will be immediately due and payable and subject to immediate collection by the government and I understand that the government may seek immediate collection of the entire fine, forfeiture, or restitution from any assets without regard to any schedule of payments imposed by the Court or established by the Probation Office. I agree that I will make a good faith effort to pay any fine, forfeiture, or restitution I am ordered to pay. Before or after sentencing, I will upon request of the Court, the government, or the Probation Office, provide accurate and complete financial information, submit sworn statements and give depositions under oath concerning my assets and my ability to pay, surrender assets I obtained as a result of my crimes, and release funds and property under my control in order to pay any fine, forfeiture, or restitution. I agree to pay the special assessment at the time of

PLEA AGREEMENT
CR 14-149 RS                                6

sentencing.

10. I agree to cooperate with the U.S. Attorney's Office before and after I am sentenced. My cooperation will include, but will not be limited to, the following:

    a. I will respond truthfully and completely to any and all questions put to me, whether in interviews, before a grand jury or at any trial or other proceeding;

    b. I will provide all documents and other material asked for by the government;

    c. I will testify truthfully at any grand jury, court or other proceeding as requested by the government;

    d. I will surrender any and all assets acquired or obtained directly or indirectly as a result of my illegal conduct;

    e. I will request continuances of my sentencing date, as necessary, until my cooperation is completed;

    f. I will not reveal my cooperation, or any information related to it, to anyone without prior consent of the government.

    g. I will participate in undercover activities under the supervision of law enforcement agents or the U.S. Attorney's Office.

11. I agree that the government's decision whether to file a motion pursuant to U.S.S.G. § 5K1.1, as described in the government promises section below, is based on its sole and exclusive decision of whether I have provided substantial assistance and that decision will be binding on me. I understand that the government's decision whether to file such a motion, or the extent of the departure recommended by any motion, will not depend on whether convictions are obtained in any case. I also understand that the Court will not be bound by any recommendation made by the government.

12. I agree not to commit or attempt to commit any crimes before sentence is imposed or before I surrender to serve my sentence. I also agree not to violate the terms of my pretrial release; not to intentionally provide false information to the Court, the Probation Office, Pretrial Services, or the government; and to comply with any of the other promises I have made in this Agreement. I agree that if I fail to comply with any promises I have made in this Agreement, then the government will be released from all of its promises in this Agreement, including those set forth in the Government's Promises Section below, but I will not be released from my guilty plea.

PLEA AGREEMENT  
CR 14-149 RS                        7

13. If I am prosecuted after failing to comply with any promises I made in this Agreement, then (a) I agree that any statements I made to any law enforcement or other government agency or in Court, whether or not made pursuant to the cooperation provisions of this Agreement, may be used in any way; (b) I waive any and all claims under the United States Constitution, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal statute or rule, to suppress or restrict the use of my statements, or any leads derived from those statements; and (c) I waive any defense to any prosecution that it is barred by a statute of limitations, if the limitations period has run between the date of this Agreement and the date I am indicted.

14. I agree that this Agreement contains all of the promises and agreements between the government and me, and supersedes any other agreements, written or oral. No modification of this Agreement shall be effective unless it is in writing and signed by all parties.

15. I agree that the Agreement binds the U.S. Attorney's Office for the Northern District of California only, and does not bind any other federal, state, or local agency.

The Government's Promises

16. The government agrees to move to dismiss any open charges pending against the defendant in the captioned Indictment at the time of sentencing.

17. The government agrees not to file any additional criminal charges against the defendant that could be filed as a result of the investigation that led to the captioned Indictment unless the defendant violates the terms of the Agreement above.

18. The government agrees to recommend the Guideline calculations set out above unless the defendant violates the terms of the Agreement above or fails to accept responsibility.

19. The government agrees not to use any statements made by the defendant pursuant to this Agreement against him unless the defendant violates the terms of the Agreement above.

20. If, in its sole and exclusive judgment, the government decides that the defendant has cooperated fully and truthfully, provided substantial assistance to law enforcement authorities within the meaning of U.S.S.G. § 5K1.1, and otherwise complied fully with this Agreement, it will file with the Court a motion under § 5K1.1 and/or 18 U.S.C. § 3553 that explains the nature and extent of the defendant's cooperation and recommends a downward departure.

The Defendant's Affirmations

21. I confirm that I have had adequate time to discuss this case, the evidence, and the Agreement with my attorneys and that my attorneys have provided me with all the legal advice that I requested.

22. I confirm that while I considered signing this Agreement, and at the time I signed it, I was not under the influence of any alcohol, drug, or medicine that would impair my ability to understand the Agreement.

23. I confirm that my decision to enter guilty plea is made knowing the charges that have been brought against me, any possible defenses, and the benefits and possible detriments of proceeding to trial. I also confirm that my decision to plead guilty is made voluntarily, and no one coerced or threatened me to enter into this Agreement.

Dated: October 14, 2014

IMRAN HUSAIN
Defendant

MELINDA HAAG
United States Attorney

Dated: October 14, 2014

BENJAMIN KINGSLEY
Assistant United States Attorney

24. I have fully explained to my client all the rights that a criminal defendant has and all the terms of this Agreement. In my opinion, my client understands all the terms of this Agreement and all the rights my client is giving up by pleading guilty, and, based on the information now known to me, my client's decision to plead guilty is knowing and voluntary.

Dated: October 14, 2014

VICTOR SHERMAN / GEORGE B. NEWHOUSE
Attorneys for Defendant

PLEA AGREEMENT
CR 14-149 RS                                           9