DAVID L. ANDERSON (CABN 149604)
United States Attorney

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

BENJAMIN KINGSLEY (CABN 314192)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-6937
    FAX: (415) 436-7234
    benjamin.kingsley@usdoj.gov

Attorneys for the United States of America

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. CR 14-149 RS |
| Plaintiff, | **UNITED STATES'** |
| | **SENTENCING MEMORANDUM** |
| v. | |
| | Sentencing Date:  November 5, 2019 |
| IMRAN HUSAIN, | Sentencing Time: 2:30 p.m. |
| Defendant. | |

## INTRODUCTION

On October 14, 2014, defendant Imran Husain pleaded guilty to Count One of the Indictment, charging him with conspiracy to obstruct the proceedings of the Securities and Exchange Commission ("SEC").  That same day, the parties entered into a plea agreement pursuant to Rule 11(c)(1)(B).  Dkt. 24.

U.S. Probation has recommended that Husain is an Offense Level of 13 and is in Criminal History Category I, resulting in a Guidelines range of 12 to 18 months of imprisonment, in Zone C of the Guidelines.  Probation recommends a variance to a sentence of three years of probation.  The government moves under U.S.S.G. § 5K1.1 for a downward departure and recommends a three year term of probation, no restitution, and no fine.

SENTENCING MEMORANDUM

1

**DISCUSSION**

2

**A.      Offense Conduct**

3   From March 2008 to December 2013, Husain and his co-defendant, Gregg Jaclin, a New Jersey

4   securities lawyer, manufactured publicly traded shell companies to sell to individuals to use in market

5   manipulation schemes.   PSR ¶ 6.   Together, Husain and Jaclin created and took public for sale

6   approximately ten shell companies for this purpose, and took an eleventh company through most of the

7   process.  *Ibid.*  They sold the companies for a total of $2.25 million.  *Ibid.*  Husain created, controlled,

8   financed, and owned the companies, choosing nominee shareholders and officers who acted entirely at his

9   direction.  PSR ¶¶ 7–8.   Jaclin guided Husain through the process and approved all of the SEC filings,

10   including S-1 registrations and periodic filings, which consistently contained misrepresentations regarding

11   the true control person behind the companies (Husain) and the true purpose of the companies (to sell as

12   public shells).   PSR ¶¶ 8–10.   Husain ultimately sold the shares of the companies in reverse merger

13   transactions, with Jaclin's assistance, knowing that the people to whom they were selling the companies

14   might use them in market manipulation schemes.   PSR ¶ 11.   They structured the transactions to conceal

15   Husain's true role and ensure delivery of freely trading shares to the purchasers of the companies.   PSR

16   ¶ 12.   Eventually, as SEC investigations in Los Angeles and San Francisco began looking into the

17   manipulations that used the public companies, Husain coached nominee CEOs to perjure themselves in

18   SEC testimony.  PSR ¶ 14.

19

**B.      Guideline Calculations**

20   The government agrees with Probation's calculation of the Guidelines, set forth below:

21   a.      Base Offense Level, § 2J1.2(a)                                                14

22   b.      Organizer or leader, § 3B1.1(c)                                              +2

23   c.      Acceptance of responsibility, § 3E1.1                                        -3

24   e.      Adjusted Offense Level                                                       13

25   Husain and Jaclin conspired to obstruct the proceedings of the SEC by filing false documents, and then

26   Husain conspired with nominee CEOs to offer false testimony to conceal their scheme.

27   Given that his Adjusted Offense Level is 13, and his Criminal History Category is I, his

28   Guidelines range is 12 to 18 months of imprisonment

**SENTENCING MEMORANDUM**

### C.      Defendant Rendered Substantial Assistance under § 5K1.1

Because Husain rendered substantial assistance in the prosecution of another person, the government moves for a downward departure under § 5K1.1 from an offense level of 13 to an offense level of 7, for a Guidelines range of 0 to 6 months.

Husain was charged in May 2014 with conspiracy and obstruction, arising from his successful conspiracy to cause one of his nominee CEOs to perjure herself in SEC testimony.  By July 2014 he was cooperating, and he proffered multiple times with the government, across 2014, 2017, and 2019.

Husain was an outstanding cooperator, and his cooperation made a case against Jaclin, who, as an attorney, was a crucial gatekeeper in the microcap manipulation world.  The government would not have been able to make a case against Jaclin without Husain's cooperation.

Husain's cooperation was particularly valuable in at least three ways.  First, Husain recounted in detail how Jaclin knew exactly what Husain was doing with the shell companies—and how Jaclin knew that many of the SEC filings that Jaclin's firm was preparing and Jaclin was approving—were false, particularly with respect to Husain's role.  He outlined in his statements to the government how the various small details about the structure of their transactions—including the financings, share transfers, and payouts—established Jaclin's knowledge that Husain actually controlled the companies and concealed his role through nominees.  These included particular instances in which payments to CEOs and Husain were structured in ways inconsistent with the story presented in the SEC filings, as well as instances in which Husain and Jaclin struggled track down nominee shareholders after the fact to sign off on the sales of the companies—a problem one would only have if the shareholders did not care about the sale of their shares because they were not real shareholders and were not actually getting paid for them.

Second, Husain produced documents, including emails and texts messages that the government did not previously possess, that were highly incriminating of Jaclin.  These included text chains between Jaclin and Husain about particular SEC filings, and communications about how to deal with one of the nominee CEOs who started asking hard questions of both defendants, and who resigned right before the S-1 registration statement for her shell company was supposed to go public.  These texts and emails confirmed that Jaclin knew about this person's resignation and the reasons for it, and that he and Husain

**SENTENCING MEMORANDUM**

1    together concocted a story to conceal it.  When the SEC questioned the reasons for this CEO's

2    resignation via comment letters, Jaclin and Husain together submitted responses that falsely described

3    why she had resigned and whether anyone (i.e., Husain) was involved in her resignation and the

4    selection of a new CEO.  The documents provided by Husain proved that Jaclin knew these responses

5    were false at the time that he approved their submission to the SEC.

6        Third, Husain described an episode, previously unknown to the government, in which Jaclin and

7    Husain conspired to destroy evidence.  Husain informed the government that Jaclin had told Husain that

8    his firm had received a subpoena from somewhere (Husain remembered it was Texas; in fact, Jaclin's

9    firm received a subpoena from the Dallas SEC right before the conversation with Husain).  Jaclin then

10   asked Husain to pay Jaclin's law firm's IT provider to wipe the firm's servers of records of their

11   communications, which were voluminous and obviously problematic for Jaclin if he ever wanted to

12   disclaim knowledge of Husain's true role.  Husain did so.  Husain provided email correspondence

13   relating to this, including emails between Husain and Jaclin's IT firm that the government did not

14   previously have, leading the government to the IT firm and corroborating Husain's story.

15       Though unnecessary to establish substantial assistance, Husain continued cooperating with the

16   government, into 2019, on other investigations as well.  The government can provide more detail to the

17   Court about that cooperation under seal if necessary.

18       **D.    A Sentence of Probation Is Sufficient to Comply with 18 U.S.C. § 3553(a).**

19       At its core, Husain and Jaclin's crime was a regulatory offense.  With Jaclin, Husain evaded SEC

20   rules designed to ferret out people doing exactly what he was doing—manufacturing public shell

21   corporations—by concealing his role and the true purpose of the companies in SEC filings.  Though the

22   companies they created were not inherently fraudulent, they were tailor made for people who wanted to

23   use them to run pump-and-dumps, because they offered clean vehicles that could easily be controlled

24   after they were sold.  Their offense was akin, in some respects, to selling a lawful tool to people they

25   knew were likely to use it unlawfully, and lying to regulators about their business to keep from getting

26   shut down.  Nonetheless, Husain did not defraud any investors directly himself—his "investors" were

27   nominees who he controlled, and the buyers of his companies all knew what he was selling them.  His

28   lies to the SEC were designed to allow him to keep selling shell companies.  Though these lies may have

**SENTENCING MEMORANDUM**

mislead downstream investors about the true corporate history of the companies involved in market manipulation schemes, they were not at the core of any such schemes.

In the end, given the nature of his offense and his outstanding cooperation, a sentence of probation is warranted.  Over seven years has passed since Husain's scheme was completed, and during that time, he ceased his conduct, pleaded guilty, fully accepted responsibility, and aided multiple government investigations into market manipulators.

## CONCLUSION

With full consideration of all the sentencing factors set forth in 18 U.S.C. § 3553(a), the United States respectfully requests that the Court impose a sentence of three years of Probation and a $100 special assessment.

DATED: October 21, 2019

Respectfully submitted,

DAVID L. ANDERSON
United States Attorney

_____/s/_____
BENJAMIN KINGSLEY
Assistant United States Attorney

**SENTENCING MEMORANDUM**